## Unisys Corporation v. Entex Information Services Inc.

C.P. of Montgomery County, no. 99-10694.

*Joseph J. Costello* and *William H. Bradbury III,* for plaintiff.

*Marjorie E. Greenfield* and *Jean L. Schmitt,* for defendant.

LOWE, *S.J.,* February 3, 2000—Peter N. Van Zant was the managing principal of plaintiff Unisys Corporation's network and desktop consulting practice for the United States and Canada. In connection with the grant of stock options to him, Mr. Van Zant signed an agreement that provided:

"5.1 For 12 months after leaving Unisys, optionee will not: (a) directly or indirectly solicit or attempt to influence any employee of Unisys to terminate his or her employment with Unisys . . . ." (Exhibit P-2.)

He also entered into an agreement protecting the confidentiality of Unisys Corporation's proprietary information. (Exhibit P-1.)

In December 1998, Mr. Van Zant was contacted by a recruiter who raised the possibility of his working for defendant Entex Information Services Inc., a competitor of Unisys Corporation's network and desktop consulting practice. He revised his resume, emphasizing his recruiting skills by referring to them multiple times. (Exhibit P-3.)

Prior to the hiring, Entex' senior vice president in charge of the consulting practice, Richard Nathanson, asked Mr. Van Zant whether he had any noncompetition agreements, and was informed of the prohibitions against competing and recruiting Unisys employees. Copies of the agreements were given to Mr. Nathanson. Although Mr. Van Zant, Mr. Nathanson, and Entex' other witnesses testified that they scrupulously abided by those agreements, what they did was conform their testimony to an unreasonably narrow reading of the terms of the agreements. Entex, through Mr. Van Zant and its other employees, engaged in blatant efforts to recruit Unisys employees.

When Mr. Van Zant left Unisys, he sent an e-mail message to everyone under his supervision at the network and desktop constructing practice stating, in part:

"I will, over the course of the next several days, be selecting one of several job offers, each of which will afford me a financial opportunity which cannot be found at Unisys.

"I will remember fondly our time together and hope that out paths will cross again. Please stay in touch." (Plaintiff's exhibit 7.)

Mr. Van Zant was familiar with the skills of the employees under his supervision and the projects on which they worked. During the course of his employment, he regularly copied Unisys documents, including confidential documents, from the laptop computer Unisys supplied, to his home computer. These files were not returned when he left Unisys.

Thereafter, Mr. Van Zant solicited, and Entex hired, David Goldstein, Michael Sisson, Daniel Senkiewicz, Ervin Kollek, Don Vanderzel, Peggy Byrnes, Doug Pugh, Trey Sunderland, David Hamersley, Michael Ramirez, Giovanni Roa, Michael Nozaki and Jann Henderson. Of those employees, Mr. Goldstein, Mr. Kollek, Mr. Senkiewicz and Mr. Sunderland were also parties to agreements with Unisys prohibiting them from soliciting or attempting to influence employees of Unisys from leaving their employment. All had confidentiality agreements with Unisys.

While this recruiting was claimed by Entex to conform to the letter of the agreements, we found that Entex, and its agent Peter Van Zant, engaged in conduct that violated his agreement with Unisys. In addition to the

solicitation in his departing e-mail, Mr. Van Zant invited former colleagues to "social" engagements at which he spoke about the opportunities at Entex. He then received communications from those persons which were written as if these meetings had not occurred. In accordance with the recruiting plan, Mr. Van Zant forwarded those communications to recruiting personnel at Entex.

Entex offered the testimony of several former Unisys employees who claimed that their departure from Unisys was based on their own dissatisfaction, and not solicitation by Mr. Van Zant. This testimony also conformed to Entex' unreasonably narrow reading of the agreements. We did not find it credible.

Following transcription of the notes of testimony of hearings held on September 13 and 14, 1999, the parties submitted proposed findings of fact and conclusions of law and briefs. On November 16, 1999, we issued the preliminary injunction appealed from, prohibiting Entex from inducing, encouraging or permitting Mr. Van Zant, Mr. Goldstein, Mr. Kollek, Mr. Senkiewicz and Mr. Sutherland from soliciting Entex employees, and enjoined those and the other former Unisys employees from the disclosure of confidential information. We also ordered Entex to return any Unisys confidential information to Unisys. We directed Entex to require Messrs. Van Zant, Goldstein, Kollek, Senkiewicz and Sutherland to respond in a specific way to any inquiries from Unisys employees for a period of 12 months from the date each respective individual left employment. We conditioned that preliminary injunction on the posting of a bond in the amount of $20,000. That bond was posted on November 18, 1999. On December 17, 1999, Entex filed this appeal.

Entex' concise statement of matters complained of on appeal asserts that the evidence was insufficient to support the issuance of a preliminary injunction, based on an alleged failure to establish each of the required elements. Entex also claims that the injunction was overbroad and not supported by the evidence. Entex asserts that the injunction covered individuals Unisys conceded it had no evidence of violation of their agreements. Entex asserts that we erred by precluding the testimony of three of its employees formerly employed by Unisys, and that we erred by precluding an Entex employee from testifying about statements made to her by former Unisys employees.

A preliminary injunction may be issued when the court finds that the activity to be restrained is actionable, is reasonably subject to abatement by the issuance of an injunction, an injunction is necessary to prevent immediate and irreparable harm which cannot be compensated by damages, greater injury would result by refusing the injunction than by granting it, and if it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295 (Pa. Super. 1999). An appellate court's review of an order granting a preliminary injunction is limited. The court is bound by the chancellor's findings of fact, and is limited to determining whether the record demonstrates any reasonable grounds for the trial court's action. The decision may be reversed only if the record reveals that no grounds existed to support the decree, or that the rule of law upon which the court relied was palpably erroneous or misapplied. *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d at 298.

While Unisys chose not to sue Mr. Van Zant or its other former employees, that does not preclude it from bringing an action against and seeking injunctive relief from Entex on the theory of interference with contractual relations. That cause of action exists against a person who intentionally and improperly interferes with the performance of a contract between another and a third party by inducing or otherwise causing the third party not to perform that contract. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 431, 393 A.2d 1175, 1183 (1978), *cert. denied,* 442 U.S. 907 (1979). In appropriate circumstances, injunctive relief is a proper remedy for an intentional interference with contractual relations. *Id.* at 436 n.21, 393 A.2d at 1185 n.21.

Irreparable harm may be established by the disruptive effect of the breach of a covenant in an employment agreement. Irreparable harm can arise because damage cannot be estimated by an accurate pecuniary standard. Injunctive relief is also appropriate because the breach of a covenant establishes an unbridled threat of the continuation of its violation. *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295. Even when no contractual relation exists, a new employer may be liable to the old for inducing a breach of future contractual relations by causing an employee to commit wrongs against a former employer. *SHV Coal Inc. v. Continental Grain Co.,* 376 Pa. Super. 241, 251, 545 A.2d 917, 922 (1988), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991).

The evidence in this case established an actionable interference with Unisys' contracts between its former employees prohibiting solicitation and disclosure of confidential information. Unisys proved improper means, improper purposes, and consciousness of that impropri-

ety by having the former Unisys employees send communications that suggested no solicitation occurred. Unisys offered evidence of the efforts it has made to compensate for the loss of the employees who were solicited improperly. It could not quantify that loss in dollar amounts. If the injunction we entered had not been granted, Entex would get away with causing the former Unisys employees to violate their agreements, and Unisys would suffer irreparable harm. The injunction restored the parties to their status as it existed before the violation, with operative contracts prohibiting solicitation and disclosure of confidential information.

We assume that Entex' complaint about overbreadth of the injunction relates to our inclusion of employees who were not proved to have engaged in improper conduct. We found that the conduct of Entex with respect to Mr. Van Zant, which showed a complete disregard for the nonsolicitation and confidentiality agreements, and the institution of procedures designed to cover that up, give ample reason to believe that Entex, if not enjoined, would seek to induce the breach of the contracts those other employees had with Unisys. Our injunction was supported by the evidence and tailored to deal with the proven violations.

The remaining matters complained of by Entex relate to the preclusion of evidence. One involved the testimony of Lisa Carr. The evidence offered and our ruling appear an pages 290-91 of the transcript of September 14, 1999. Counsel for Entex asked Ms. Carr to relate conversations with several former employees of Unisys about their situation at Unisys. Counsel for Unisys objected on the basis of hearsay. Counsel for Entex asserted that this evidence was relevant to the state of mind of Entex. We

sustained the objection because the exception to the hearsay rule for evidence of intent and state of mind refers to the intent or state of mind of the *declarant,* not the state of mind of the witness. Pa.R.E. 803(3); *Commonwealth v. Wright,* 455 Pa. 480, 486, 317 A.2d 271, 274 (1974); *Romeo v. Manuel,* 703 A.2d 530, 533 (Pa. Super. 1997).

Finally, Entex asserts that we erred by precluding the testimony of its witnesses, Don Vanderzel, Trey Sunderland and Michael Ramirez. Those individuals were presented at the conclusion of the second day of hearing, when it was 4:30 p.m. We held court from 9:30 a.m. until that time, with an hour and 10 minute lunch, and were not in a position to hear more evidence that day. Counsel for Entex argued that the parties had agreed to divide their time, and that Unisys had taken more than half the time. There was no effort by Entex to limit the testimony from Unisys prior to the time it rested, nor was there a request made for an additional hearing date. No offer of proof was made. We suggested that the parties attempt to stipulate to what this testimony would be, but they did not. We assumed it would be similar to the testimony of the other former Unisys employees. It is within the discretion of the trial court to preclude cumulative evidence. Pa.R.E. 403; *Gustison v. Ted Smith Floor Products Inc.,* 451 Pa. Super. 442, 458, 679 A.2d 1304, 1313 (1996); *Soda v. Baird,* 411 Pa. Super. 80, 87-88, 600 A.2d 1274, 1278 (1991), *allocatur denied,* 532 Pa. 665, 616 A.2d 986 (1992).